IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Be Green Packaging, LLC,<br><br>　　Plaintiff,<br><br>　　v.<br><br>Shu Chen,<br><br>　　Defendant. | Case No. 9:19-cv-3273-RMG<br><br>Jury Trial Demanded |

## COMPLAINT

Be Green Packaging, LLC ("Be Green," "the Company" or "Plaintiff") files this Complaint against Defendant Shu Chen ("Chen" or "Defendant"), and, demanding a trial by jury, alleges as follows:

## NATURE OF THE ACTION

1.　　Be Green, an industry-leading global manufacturer of various packaging goods, recently discovered that its former Manager, who was Be Green's Executive Vice President of Technology and Asian Market, and a member of the Board of Directors, breached the confidentiality and intellectual property assignment provisions of two separate agreements he entered into with the Company, as well as the non-competition provision of his more recent agreement. He also breached his fiduciary duty to Be Green, when, *inter alia*, he signed a joint development agreement with a competitor of Be Green. Additionally, while being paid to develop manufacturing technology for Be Green, Defendant secretly filed Chinese patent applications on that technology in the name of a company he (or his wife) owned or are affiliated with, while telling others at Be Green and the Board of Directors that the technology was not patentable. When Defendant filed those applications, he divulged certain confidential

1

information of Be Green, in contravention of his agreements with the Company, and misappropriated Be Green's trade secrets. All of these acts took place while Defendant was a Board member and officer of Be Green. Based on the aforementioned acts, this civil action is brought by Be Green for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, tortious interference with prospective contractual relations, and a claim under the Defend Trade Secrets Act. Plaintiff therefore seeks injunctive relief, compensatory and punitive damages, costs, attorneys' fees, and any other relief this Court deems appropriate.

## THE PARTIES

2.Be Green is a Limited Liability Company organized and existing under the laws of California with its principal place of business at 4425 Grays Highway, Ridgeland, South Carolina 29936. Plaintiff is a leading global manufacturer of specialty molded fiber packaging for food service, a wide range of consumer packaged goods, as well as e-commerce applications. Be Green specializes in the design, manufacture, and distribution of compostable packaging solutions.

3.Upon information and belief, Defendant is a resident of Illinois. Defendant was an employee of Be Green. He held the position of Executive Vice President of Technology and Asian Market, and was an officer and member of the Board of Directors of Be Green.

## JURISDICTION AND VENUE

4.The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a). This case is assignable to the Beaufort Division pursuant to Local Civ. Rule 3.01 (D.S.C.).

5.Plaintiff is a California Limited Liability Company with its principal place of business at 4425 Grays Highway, Ridgeland, South Carolina 29936.

6.Upon information and belief, Defendant is a citizen of the State of Illinois.

7.The amount in controversy exceeds $75,000.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that Defendant regularly traveled to South Carolina for Board meetings, and a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District.

9. This Court has personal jurisdiction over Defendant because Defendant has regular contacts with South Carolina and has purposefully availed himself of the forum by entering into employment agreements and serving as Executive Vice President of Technology and Asian Market, Manager, and a member of the Board of Directors with Plaintiff, an entity with its principal place of business in South Carolina.

## FACTUAL ALLEGATIONS

10. Upon information and belief, the employment relationship between Plaintiff and Defendant began in 2013.

11. Beginning on or about December 13, 2013, Defendant served in the following capacities at Be Green: Manager, Executive Vice President of Technology and Asian Market, and member of the Board of Directors. On or about November 1, 2019, Defendant resigned from the Board of Directors and his role as Manager, and was terminated from his position as Executive Vice President of Technology and Asian Market.

**The Agreements**

12. On or about October 16, 2015, Plaintiff and Defendant entered into an Employment Agreement (the "2015 Agreement") when Defendant emailed his signed copy of the agreement to Be Green. A true and correct copy of the 2015 Agreement is attached hereto as Exhibit A. The 2015 Agreement provided that Be Green employed Defendant in the position of the Executive Vice President of Technology and Asian Market of Be Green.

13. The 2015 Agreement had an original term of three years from the effective date, or October 16, 2018. The 2015 Agreement renewed automatically by its terms for an additional year, unless terminated earlier.

14. At issue in this proceeding are certain provisions of the 2015 Agreement. One is Section (6)(f)(i) (the "2015 IP Assignment Provision"), which provides:

> Executive agrees that upon conception and/or development of any idea, discovery, invention, improvement, software, writing or other material or design that: (A) relates to the business of the Company, or (B) relates to the Company's actual or demonstrably anticipated research or development, or (C) results from any work performed by Executive for the Company, Executive will assign to the Company the entire right, title and interest in and to any such idea, discovery, invention, improvement, software, writing or other material or design.

15. Another is Section (6)(e)(i) (the "2015 Confidentiality Provision"), which provides:

> Executive will keep in strict confidence, and will not, directly or indirectly, at any time, during or after Executive's employment with the Company, disclose, furnish, disseminate, make available or, except in the course of performing Executive's duties of employment, use any trade secrets or confidential business and technical information of the Company or its customers or vendors, without limitation as to when or how Executive may have acquired such information.

**Developing New Technology – The FMC Process**

16. In around May or June of 2017, Defendant remained an executive, officer and a member of the Board of Be Green. At that time, Be Green was seeking to develop more efficient processes for manufacturing sustainable packaging.

17. In connection with these endeavors, Jim Brown (Be Green's Manager and Chief Executive Officer) and Defendant, began developing the Flexible Manufacturing Cell ("FMC")

4

process for Be Green to increase production efficiency. The concept was to create a centralized robot arm that could interact with various pieces of molding and forming machinery at various stages in the manufacturing process, resulting in more efficient processes than a standard production line process.

18.     In October of 2017, the Be Green Board of Directors authorized Defendant to continue with development and building of a prototype FMC for use in manufacturing molded fiber packaging.

**Defendant Seeks Patent Coverage on FMC Process**

19.     About a month later, on November 15, 2017, Defendant, through a company owned, upon information and belief, wholly by (or affiliated with) himself and/or his wife, Shurcon Technology Co., Ltd. ("Shurcon"), filed a patent application in China, Publication No. CN207404482 (the "'4482 Patent"), for a "flexible production line for the production of pulp modified products." This application was for a utility model patent. The patent issued in May, 2018.

20.     On or about November 15, 2017, Defendant, through Shurcon, also filed an invention application for a patent in China. This application, Publication No. CN107915044 (the "'5044 Application"), was also for a "flexible production line for the production of pulp molded products." The application is currently pending.

21.     The '4482 Patent and '5044 Application describe the FMC technology that the Board of Directors for Be Green directed Defendant to develop for Be Green's business.

22.     During the pendency of the 2015 Agreement, Defendant was required to assign to Be Green all rights, title, and interest in any discovery or invention he developed that relates to the business of Be Green. The technology and inventions of the '4482 Patent and '5044 Application relate to Be Green's business. Indeed, Be Green instructed Defendant to develop the

technology to increase its production efficiencies. Be Green engineers participated in the development of the FMC technology, alongside Defendant.

23. On or about January 29, 2018, Plaintiff and Defendant entered into a Non-Competition Agreement (the "2018 Agreement"). A true and correct copy of the 2018 Agreement is attached hereto as Exhibit B.

24. Section 1(j)(i) (the "2018 Confidentiality Provision") provides:

> Employee will keep in strict confidence, and will not, directly or indirectly, at any time during or after Employee's employment with the Company, disclose, furnish, disseminate, make available or, except in the course of performing Employee's duties of employment, use any trade secrets or confidential business and technical information of the Company or its customers or vendors, without limitation as to when or how Employee may have acquired such information.

25. Section 1(k)(i) (the "2018 IP Assignment Provision") provides:

> Employee agrees that upon conception and/or development of any idea, discovery, invention, improvement, software, writing or other material or design that: (A) relates to the business of the Company, or (B) relates to the Company's actual or demonstrably anticipated research or development, or (C) results from any work performed by Employee for the Company, Employee will assign to the Company the entire right, title and interest in and to any such idea, discovery, invention, improvement, software, writing or other material or design.

26. Section 1(b) (the "2018 Non-Competition Provision") provides:

> During Employee's employment with the Company, Employee will not compete with the Company anywhere in the world. In accordance with this restriction, but without limiting its terms, during Employee's employment with the Company, Employee will not: (i) enter into or engage in any business which competes with the Company's Business; (ii) solicit customers, business, patronage or orders for, or sell, any products or services in competition with, or for any business that competes with, the Company's Business; (iii) divert, entice or otherwise take away any customers, business, patronage or orders of the Company or attempt to do so; or (iv) promote or assist, financially or otherwise, any person, firm, association, partnership, corporation or other entity engaged in any business which competes with the Company's Business.

6

27. The 2015 Agreement included a substantially similar non-competition provision, and, as such, Defendant has been bound by a non-competition provision since at least 2015.

28. Be Green discussed with Defendant the question of patent protection for the FMC technology and related products. Defendant said that there were no patentable aspects to the FMC technology, despite having filed patent applications for such technology at least as early as November, 2017, without telling Be Green he made those filings.

29. On April 10, 2018, Defendant, through Shurcon, filed a Chinese utility model patent application, Publication No. CN108457132, for an "aluminum ammonia heat pipe pulp molding hot pressing drying mold and drying method." The application became a patent on August 28, 2018 (the "'7132 Patent"). This patent describes a release chamber that is used in the hot press, and is part of Be Green's confidential FMC process.

30. On April 10, 2018, Defendant, through Shurcon, filed an invention patent application, Publication No. CN208121482, for "aluminum ammonia heat pipe pulp molding hot pressing drying mold and drying method" (the "'1482 Application"). This application also describes a release chamber that is used in the hot press, and is part of Be Green's confidential FMC process.

31. On January 31, 2019, Defendant, through Shurcon, filed a Chinese invention patent application entitled "a transfer device and production line for pulp molding mechanical arm" under Publication No. CN110216710 (the "'6710 Application"). The '6710 Application describes a fixture for use in the FMC process, one that Defendant was working on for Be Green at the time.

32. On January 31, 2019, Defendant, through Shurcon, filed a Chinese invention patent application for "a pulp molding production line and processing method" under Publication

No. CN110219210 (the "'9210 Application"). This patent application also describes a fixture for use in the FMC process, one that Defendant was working on for Be Green at the time.

33. The 2018 Agreement remains in force and was in force when Defendant filed patent applications described above.

34. Despite the 2015 and 2018 IP Assignment Provisions requiring Defendant to assign to Be Green all intellectual property he developed relating to Be Green's business, Defendant has filed at least six Chinese patent applications that relate to Be Green's confidential FMC technology, in the name of Shurcon, never disclosing their existence to Be Green.

35. In addition, Defendant breached the 2015 Confidentiality Provision, as well as the 2018 Confidentiality Provision, by disclosing confidential business information relating to the FMC technology in those applications. Many of the figures in those applications depict FMC equipment installed at Be Green's facility in China.

36. Defendant never sought permission to file the above-referenced patent applications and did not ever give notice thereof to Be Green.

**Defendant Usurps a Corporate Opportunity**

37. In around the Spring of 2018, Be Green began working with Pivot Packaging to manufacture compostable pizza boxes. Over the course of the next year, Defendant and other Be Green employees developed tooling for production of the pizza boxes using FMC technology and made prototypes of the boxes.

38. Scott Lilley ("Lilley"), the former CFO of Be Green, owned Pivot Packaging. Lilley was very familiar with Be Green's and the Defendant's manufacturing and design capabilities.

39. Pivot Packaging was eventually acquired by Zume, Inc., and they are referred to herein collectively as "Zume".

40. Between around April 2018 until July 2019, Be Green worked on and made tooling for, and prototypes of, pizza boxes for Zume.  Defendant played a critical role in the development of the pizza box business for Be Green.

41. During the time it was working on tooling and prototypes for Zume, Be Green engaged in negotiations for an agreement to cover the product development and supply of the pizza boxes.  In his position as a board member and an officer, Defendant knew of these negotiations.

42. Upon information and belief, in or around July, 2019 while Defendant was an officer and Board member of Be Green, Defendant, through Shurcon, entered into a Joint Development Agreement with Zume ("Zume JDA").

43. Upon information and belief, the purpose of the Zume JDA was to enable Zume to manufacture pizza trays, utilizing Be Green's proprietary FMC technology.

44. Upon information and belief, while working with Zume, Defendant provided Zume with Be Green's confidential information regarding use of FMC technology to manufacture pizza boxes.

45. Zume posted a video on its website touting its ability to manufacture sustainable pizza boxes.  The video showed pizza boxes being manufactured using Be Green's FMC technology.

## COUNT 1

**(Breach of Contract – 2015 Agreement)**

46. Plaintiff reincorporates, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1 – 45 above, as if fully set forth herein.

47.     Plaintiff and Defendant entered into the 2015 Agreement.  The 2015 Agreement was valid and subsisting for three years, and such time frame encompasses a variety of Defendant's activities that constitute breach of contract.

48.     The 2015 Agreement was a binding contract between Be Green and Defendant.

49.     By filing patent applications disclosing confidential information and technology of Be Green, and by failing to assign patent applications to Be Green, Defendant materially breached the 2015 Confidentiality Provision and the 2015 IP Assignment Provision.

50.     As a direct and proximate result of Defendant's breach of both the 2015 IP Assignment Provision and the 2015 Confidentiality Provision, Plaintiff has suffered substantial and irreparable injury to its business.

51.     As a direct and proximate cause of Defendant's breach of the 2015 Agreement, Plaintiff has suffered damages in an amount exceeding $75,000 and to be determined at trial. Additionally, Plaintiff has incurred and will incur attorneys' fees.

52.     Upon information and belief, as a result of his acts, Defendant has been and will continue to be unjustly enriched by monies that Defendant has received and will receive in connection with the improperly filed patent applications and use of technology related thereto.

53.     Defendant's activities have caused and will continue to cause Plaintiff irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Plaintiff with complete relief.

## COUNT 2

### (Breach of Contract – 2018 Agreement)

54.     Plaintiff reincorporates, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1 – 53 above, as if fully set forth herein.

55.     The 2018 Agreement is a binding contract between Be Green and Defendant.

56.     By filing various patent applications during the pendency of the 2018 Agreement and failing to assign them to Be Green (and instead assigning them to Shurcon), Defendant materially breached the 2018 IP Assignment Provision.

57.     By filing such patent applications and disclosing the confidential information and technology underlying the same, Defendant materially breached the 2018 Confidentiality Provision.

58.     By usurping a business opportunity from Be Green, Defendant materially breached the 2018 Non-Competition Provision.

59.     As a direct and proximate result of Defendant's breach of the 2018 IP Assignment Provision, 2018 Confidentiality Provision, and the 2018 Non-Competition Provision, Plaintiff has suffered substantial and irreparable injury to its business.

60.     As a direct and proximate cause of Defendant's breach of the 2018 Agreement, Plaintiff has suffered damages in an amount exceeding $75,000 and to be determined at trial. Additionally, Plaintiff has incurred and will incur attorneys' fees.

61.     Upon information and belief, as a result of his acts, Defendant has been and will continue to be unjustly enriched by monies that Defendant has received and will receive in connection with the improperly filed patent applications and use of technology related thereto.

62.     Defendant's activities have caused and will continue to cause Plaintiff irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Plaintiff with complete relief.

## COUNT 3

### (Breach of Fiduciary Duty)

63.     Plaintiff reincorporates, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1 – 62 above, as if fully set forth herein.

64. In entering into an agreement with Zume that provided compensation to himself at the expense of Be Green, which lost the account as a result of Defendant's actions, the Defendant acted in bad faith.

65. Defendant failed to exercise the appropriate care that an ordinarily prudent person would have exercised to prevent competitive harm to his employer. Defendant failed to act in the best interests of Be Green and its shareholders.

66. Defendant's acts were against the best interests of Be Green and assisted a competitor by transferring Be Green's confidential FMC technology to that competitor.

67. As a direct and proximate result of Defendant's actions, Plaintiff has suffered substantial and irreparable injury to its business.

68. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages in an amount in excess of $75,000 and to be determined at trial. Additionally, Plaintiff has incurred and will incur attorneys' fees.

69. Upon information and belief, as a result of his acts, Defendant has been and will continue to be unjustly enriched by monies that Defendant has received and will receive in connection with the Zume contract.

70. Defendant's activities have caused and will continue to cause Plaintiff irreparable harm that cannot be fully redressed through damages alone. An injunction as set forth herein is necessary to provide Plaintiff with complete relief.

## **COUNT 4**

**(Misappropriation of Trade Secrets)**

71. Plaintiff reincorporates, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1 – 70 above, as if fully set forth herein.

72. Be Green's FMC technology and related processes, information and tools constituted trade secrets of Be Green.

73. Despite being bound by confidentiality provisions under the 2015 Agreement and the 2018 Agreement, Defendant disclosed such trade secret information by filing patent applications in China and/or by disclosing trade secret information to others (such as Zume).

74. Be Green did not authorize or consent to Defendant's disclosure of its trade secret information.

75. Defendant knew or, at a minimum, had reason to know of the trade secret nature of Be Green's FMC technology, and such information was acquired under circumstances giving rise to a duty to maintain its secrecy, including, the 2015 Agreement, the 2018 Agreement, and Defendant's position as a fiduciary of Be Green.

76. As a direct and proximate result of Defendant's disclosure and use of Be Green's trade secret information, Plaintiff has suffered substantial and irreparable injury to its business.

77. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages in excess of $75,000 and in an amount to be determined at trial. Additionally, Plaintiff has incurred and will incur attorneys' fees.

78. Upon information and belief, as a result of his acts, Defendant has been and will continue to be unjustly enriched by monies that Defendant has received and will receive in connection with filing the patent applications and his work for Zume.

79. Defendant's activities have caused and will continue to cause Plaintiff irreparable harm that cannot be fully redressed through damages alone. An injunction as set forth herein is necessary to provide Plaintiff with complete relief.

## COUNT 5

### (Tortious Interference with Prospective Contractual Relations)

80. Plaintiff reincorporates, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1 – 79 above, as if fully set forth herein.

81. Upon information and belief, Defendant was aware of Be Green's efforts to obtain business from Zume supplying pizza boxes. Defendant played a critical role in the development of the prototype pizza boxes for Zume and attempting to secure that business. Defendant was a member of the Board of Directors during Be Green's work for Zume and the negotiations between Be Green and Zume.

82. Upon information and belief, Defendant used improper methods by capitalizing on his knowledge of Be Green's trade secrets, intellectual property, and other confidential information in order to secure a supply/development contract with Zume. Upon information and belief, Defendant acted with an improper purpose and financially benefitted from entering into the JDA with Zume. He did so with full knowledge of the business opportunities that Be Green had with Zume, and of the benefits of that opportunity.

83. Defendant's tortious interference with Plaintiff's prospective contractual relation caused a significant loss of potential revenue for Be Green.

84. As a direct and proximate result of Defendant's tortious interference with a prospective business relationship, Plaintiff has suffered substantial and irreparable injury to its business.

85. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages in excess of $75,000 and in an amount to be determined at trial. Additionally, Plaintiff has incurred and will incur attorneys' fees.

86. Upon information and belief, as a result of his acts, Defendant has been and will continue to be unjustly enriched by monies that Defendant has received and will receive in connection with a contract with (and work for) Zume.

87. Defendant's activities have caused and will continue to cause Plaintiff irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Plaintiff with complete relief.

## COUNT 6

### (Defend Trade Secrets Act – 18 U.S.C. §§ 1836 et seq.)

88. Plaintiff reincorporates, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1 – 87 above, as if fully set forth herein.

89. Be Green's FMC technology and related processes, information and tools constituted trade secrets of Be Green.

90. Despite being bound by confidentiality provisions under the 2015 Agreement and the 2018 Agreement, Defendant disclosed such trade secret information by filing patent applications in China and/or by disclosing trade secret information to others (such as Zume).

91. Be Green did not authorize or consent to Defendant's disclosure of its trade secret information.

92. Defendant knew or, at a minimum, had reason to know of the trade secret nature of Be Green's FMC technology, and such information was acquired under circumstances giving rise to a duty to maintain its secrecy, including, the 2015 Agreement, the 2018 Agreement, and Defendant's position as a fiduciary of Be Green.

93. As a direct and proximate result of Defendant's disclosure and use of Be Green's trade secret information, Plaintiff has suffered substantial and irreparable injury to its business.

94.     As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages in excess of $75,000 and in an amount to be determined at trial.  Additionally, Plaintiff has incurred and will incur attorneys' fees.

95.     Upon information and belief, as a result of his acts, Defendant has been and will continue to be unjustly enriched by monies that Defendant has received and will receive in connection with filing the patent applications and his work for Zume.

96.     Defendant's activities have caused and will continue to cause Plaintiff irreparable harm that cannot be fully redressed through damages alone.  An injunction as set forth herein is necessary to provide Plaintiff with complete relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and order the following:

A.     That Defendant be preliminarily and permanently enjoined from further breaches or attempted breaches of the 2018 Agreement and otherwise unfairly competing with Be Green;

B.     That Defendant immediately terminate any agreement that he or any company with which he has a relationship may have with Zume or any other competitor of Be Green;

C.     That Defendant immediately assign, and cause to be assigned, all interests in and to the patents and patent applications referenced herein to Be Green, as well as any other patents, patent applications or inventions relating to the business of Be Green;

D.     That Defendant be required to account for and pay over to Be Green its profits and the cumulative damages sustained by Be Green by reason of Defendant's unlawful

acts of misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and tortious interference with prospective business relations;

      E.      That this Court order disgorgement and/or restitution of Defendant's profits to Be Green;

      F.      That Be Green be awarded its reasonable costs and attorneys' fees;

      G.      That Be Green be awarded punitive damages; and

      H.      That Be Green have any such other and further relief as the court may deem equitable.

Dated: November 20, 2019

By: /s/ Beattie B. Ashmore
    Beattie B. Ashmore, #5215

Beattie B. Ashmore
650 E. Washington Street
Greenville, South Carolina 29601
Telephone:  (864) 467-1001
Facsimile:  (864) 672-1406
E-mail: beattie@beattieashmore.com

*Of Counsel*
Calvin P. Griffith (*pro hac vice to be filed*)
Thomas R. Goots (*pro hac vice to be filed*)
Allison L. Haugen (*pro hac vice to be filed*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
E-mail: cpgriffith@jonesday.com
trgoots@jonesday.com
ahaugen@jonesday.com

*Attorneys for Plaintiff*
*Be Green Packaging, LLC*

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Dated: November 20, 2019

By: /s/ Beattie B. Ashmore
    Beattie B. Ashmore, #5125

Beattie B. Ashmore
650 E. Washington Street
Greenville, South Carolina 29601
Telephone:   (864) 467-1001
Facsimile:    (864) 672-1406
E-mail: beattie@beattieashmore.com

*Of Counsel*:
Calvin P. Griffith (*pro hac vice to be filed*)
Thomas R. Goots (*pro hac vice to be filed*)
Allison L. Haugen (*pro hac vice to be filed*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:   (216) 586-3939
Facsimile:    (216) 579-0212
E-mail: cpgriffith@jonesday.com
trgoots@jonesday.com
ahaugen@jonesday.com

*Attorneys for Plaintiff*
*Be Green Packaging, LLC*